# CAPITAL CITY LIGHT AND FUEL COMPANY v. TALLAHASSEE.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 209. Submitted April 7, 1902.—Decided June 2, 1902.

The city of Tallahassee has never been under obligation to take electric lighting from the Capital City Light and Fuel Company.

There has been no impairment of any contract between the city and the plaintiff in error or its predecessor, and the city has the right to avail itself of the privileges granted by the acts of 1897 and 1899, so far as regards the electric lighting of the city.

THE plaintiff in error, being the plaintiff below, brings this case here by writ of error to the Supreme Court of the State of Florida for the purpose of reviewing a judgment of that court, affirming the judgment of the circuit court of the second judicial district of that State, dismissing plaintiff's bill of complaint against the defendant with costs.

The bill shows that the Tallahassee Gas and Electric Light Company was incorporated pursuant to the laws of the State, December 20, 1887, for the purpose, as stated in its articles of association, of constructing, maintaining and operating gas works and electric light works in the city of Tallahassee, and for the manufacture of gas for light and fuel, or for the pur-

pose of disposing of or dealing in coal or wood for fuel, and in maintaining and operating electric light machinery for supplying lights in the city, or for manufacturing or dealing in any and all manner of artificial light or heat within that city. After its incorporation the company applied to the city council for the franchise of constructing gas and electric light works in the city for the purposes declared in its charter, and, pursuant to such application, an ordinance of the city council was duly passed on January 4, 1888, the first section of which authorized the company " to construct gas and electric light works in the city of Tallahassee, and for that purpose that the said company shall have the right to lay their pipes in any and all streets in said city and in the alleys and lots of the same, and to erect such lamp posts or poles or towers as may be necessary or essential for furnishing gas or electric lights in said city of Tallahassee, and to this end the Tallahassee Gas and Electric Light Company are authorized to make such excavations or erect such structures, poles or towers, and run wires thereto along the streets of said city, as may be necessary or essential. .   "

Provision was also made in the ordinance as to the manner of excavating the streets, constructing the works and as to the quality and price of the gas to be furnished and the time within which the gas works should be completed and the plant put in operation. It was also provided that the company should file a written acceptance of the ordinance, whereupon the same should become binding upon both parties.

Section 7 of the ordinance provided for the completion of the gas works and for operating the same within a short time, stated therein, and ended with the following provision :

" And the said Tallahassee Gas and Electric Light Company shall put in and operate electric lights as soon as sufficient consumers can be secured to pay eight per cent interest per annum on the additional capital required to purchase the machinery for and put in practical operation the said electric lights."

Sections 10 and 11 of the ordinance read as follows :

" SEC. 10. That the said city of Tallahassee, in consideration of the foregoing requirements being complied with on the part

of the said Tallahassee Gas and Electric Light Company, their associates, successors and assigns, shall and hereby obligates itself to take all gas which it may wish to use in lighting its streets or buildings from said company at a price of not more than one and one half dollars ($1.50) per one thousand feet for such as may be used in public buildings used exclusively by said city, and at a price of not more than ($30) thirty dollars per annum for each street lamp as hereinbefore provided for in section six of this ordinance, for the period of twenty-five consecutive years from the completion of said gas works : *Provided,* That nothing herein shall be construed as an obligation on the part of the said city of Tallahassee to take any gas from said company.

"SEC. 11. That the privileges and licenses herein and hereby granted shall be exclusive in and to said Tallahassee Gas and Electric Light Company, their associates, successors and assigns, for and during the term of twenty-five years."

After the adoption of the ordinance the company filed its acceptance thereof, and proceeded to the construction of its gas works, which it completed, and thereafter furnished gas without any complaint until November 8, 1893, when a receiver was appointed, and subsequently its property was sold under a foreclosure decree. It was bid in by William A. Rawls, and a deed made to him. Thereafter, and on March 19, 1894, the plaintiff in error was incorporated, and the property conveyed to it by Rawls. It was stated in the articles of incorporation that the general nature of the business of the company to be transacted by it was "to acquire, construct, improve, maintain and operate gas works and electric light works in and adjacent to the city of Tallahassee, in Leon County, State of Florida, and to manufacture gas for light and fuel; to dispose of and deal in coal or wood for fuel; to construct, maintain and operate electric light machinery for supplying lights in and about the said city, or for manufacturing and dealing in any and all manner of artificial light or heat within or adjacent to said city."

The company was incorporated for the purpose of operating under the terms and provisions of the ordinance of the city above mentioned, the property purchased by Rawls, which he

had purchased for the purpose of transferring to the company, and in pursuance of such purpose the property was made over to the company, which entered into the possession and assumed the management and control thereof, and continued the manufacture of gas for the purpose of supplying the city and its inhabitants with light and heat, and it has since coming into the possession of the property enlarged and extended its plant, and met the increased demands of the city and its inhabitants, the city having ever since recognized, treated and dealt with the company as the lawful successor of the Tallahassee Gas and Electric Light Company, and the legal assignee of all the rights, franchises, privileges and contracts created and conferred on that company by the ordinance of the city of Tallahassee.

The legislature on June 5, 1897, passed an act, chapter 4600 of the Laws of Florida, page 141, entitled "An act to enable cities and towns to manufacture and distribute gas and electricity, and to construct, purchase, lease or establish and maintain within its limits one or more plants for the manufacture and distribution of gas and electricity for furnishing light for municipal use, and for the use of such of its inhabitants as may require and pay for the same as herein provided." Thereafter, and on May 27, 1899, the legislature of the State passed another act, to enable the city of Tallahassee to exercise the powers provided by the act of 1897, above mentioned. This act of 1899 granted to the city the right to construct and maintain its own electric light plant upon complying with certain conditions specified in the act. These conditions the city proceeded to comply with, and passed a resolution to build and operate an electric light plant of its own, which was ratified at an election by the people of the city, and the city council was about to proceed to carry out the plan for the erection and operation of such electric lighting plant to light the city under the provisions of the act of 1899, when this suit was commenced.

The plaintiff duly protested at each step against the action of the city council for the erection and operation of such a plant, and claimed that it would be a violation and impairment of the contract which it held with the city, and would very greatly injure, if not ruin, the plaintiff in error. It was also stated

that there has never been a time since the establishment of the gas works in that city that the plaintiff in error, or its predecessor, could have procured sufficient consumers to pay eight per cent per annum on the additional capital required to purchase the machinery for and put into practical operation an electric lighting system therein. The bill prayed that the city and its officers might be enjoined from establishing and maintaining an electric plant, and from furnishing electric light to the inhabitants of the city during the balance of the period of twenty-five years for which the exclusive franchise of constructing gas and electric works in that city, and for using the streets thereof for that purpose, and for furnishing gas and electric light to the inhabitants of the city was granted, to wit, until the year 1913. The bill also prayed that the city should be enjoined from making or entering into any contract or from performing any contract with any corporation or firm for furnishing electric lighting and other machinery, and that the city should be enjoined from issuing its bonds for the payment of any such plant.

This bill was demurred to for want of equity, in that it showed no facts entitling complainant to relief against the defendant as to the matters contained in it. The demurrer was sustained and the complainant's bill dismissed, and the judgment entered thereon was affirmed by the Supreme Court of Florida. 28 Southern Rep. 810.

*Mr. Frederick T. Myers* for plaintiff in error.

*Mr. George T. Raney* for defendant in error.

Mr. Justice PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The plaintiff in error claims that, under the city ordinance, it has a valid contract for the exclusive use of the streets of the city of Tallahassee for the purpose of furnishing both gas and electric light, and that the subsequent acts of the legislature, providing for the erection and operation by the city of an

electric light plant, impair the obligation of its contract, and are therefore void.

As the case involves the provision of the Federal Constitution, which prohibits the States from passing any law impairing the obligation of a contract, and as the state court has given effect to subsequent legislation, which, it is claimed, results in the impairment of the obligation of plaintiff's contract with the city, we are bound to determine for ourselves as to the existence and meaning of the alleged contract, in order to determine the question whether subsequent legislation has impaired the obligation thereof.

Plaintiff in error claims the exclusive right to use the streets and furnish both gas and electric lights by virtue of section 11 of the ordinance of the city council, referred to in the foregoing statement of facts, and by virtue of the provisions of section 38 of the general corporation act of August 8, 1868. We concur in substance in the opinion of the state court of Florida, 28 South. Rep. 813, wherein it stated as follows :

" A careful reading of the ordinance passed in 1888 will show that the city is under no obligation whatever to the appellant or its predecessor company to light the streets and public buildings of the city with either gas or electricity manufactured by said companies. Nothing is said in the ordinance about lighting the streets or public buildings with electricity manufactured by the company. In respect to gas, the city was not required to use any at all, but it obligated itself to take all gas that it might wish to use in lighting its streets and buildings from the company at prices not to exceed the amounts named for a certain term of years. There is no contract, therefore, between the city and the company that the latter shall have the right to furnish the city for lighting its streets and public buildings, all or any, by electricity used for the purpose, nor is there any stipulation in the ordinance that the city will use nothing but gas, nor that the city will not own or operate an electric light plant for supplying the city and its inhabitants with light. If the city is debarred from erecting an electric light plant by the ordinance passed by it, it is because that ordinance legally grants the company the exclusive privilege and license to use

the streets, alleys and lots of the city for the purpose of constructing and operating a plant and its instrumentalities for furnishing electric lights in the city."

The general law of Florida for the incorporation of municipal corporations, passed August 6, 1868, while empowering a city to provide for lighting its streets, and giving to it the power to regulate and control the use of its public streets, gives the city no power to grant an exclusive use of its streets to any person or corporation for the purpose of lighting the city or for providing light to its citizens. The power to obtain such exclusive use of the streets of the city, if not granted by the municipal corporation act of 1868, is said to be found in the general act passed August 8, 1868, or two days subsequently to the above act, and known as chapter 1639 of the Laws of Florida, providing for the incorporation of corporations other than those of a municipal character. Section 38 of such act reads as follows :

" Any corporation organized and put into successful operation under this act shall have exclusive privileges for the purposes of its creation for the term of twenty years from the date the corporation commences to carry out in good faith the terms of its articles of incorporation : *Provided, however*, That this investment shall not so operate as to divest any future legislature of those powers of government which are inherent and essential attributes of sovereignty, to wit : the power to create revenue for public purposes, to provide for the common defence, to provide safe and convenient ways for the public necessity and convenience and to take private property for the public use, and the like."

The defendant in error contends that the proper construction of that section does not authorize the exclusive use of the public streets of the city for lighting purposes even if consented to by the city ; that it cannot reasonably be supposed that the legislature, while omitting to give to cities the power of granting exclusive privileges in its streets for lighting or any other purpose, would, at the same time, by another act, grant to a private corporation incorporated thereunder, the right to the exclusive possession of the streets thereof for the purpose of executing the

business for which it was incorporated ; that if it were intended that the city should have power to grant such exclusive use it would have been stated in the act providing for the incorporation of cities, and, if it were not so intended, it cannot be implied from the language of the section above quoted, found in an act referring to corporations other than municipal.   The two acts, it is said, must be reconciled, and it can be done by excepting from the application of the thirty-eighth section the right to an exclusive use of the public streets of a city for any purpose.   The plaintiff in error concedes that the city has full control and management of its streets, and that the plaintiff could not use the streets for the purpose of laying its pipes, etc., therein without the consent of the city.   But it urges that, having secured such consent, it is authorized to maintain the exclusive use by reason of the thirty-eighth section above quoted, even if the city had no right to grant it under the act providing for the incorporation of cities.   This question, while stated, was not decided by the court below, and we do not find it necessary to decide it ourselves.

The ordinance adopted by the city council has reference to two absolutely separate and distinct privileges, although they are contained in one and the same ordinance.   One privilege is to use the streets of the city for the purpose of laying down gas mains and other pipes, to distribute gas throughout the city and to supply consumers with that article.   The other is the right to the use of the streets of the city for the purpose of erecting poles and other things to convey the electricity necessary for lighting purposes.   These two privileges are as absolutely separate and distinct as is a privilege to convey by railroad from that by steamboat or by stage coach.   It is seen by the terms of the ordinance that it was not contemplated that these different privileges and plants should be availed of and constructed at the same time, but on the contrary the gas plant was to be constructed at once, while the obligation to construct the other was left in abeyance and not to be entered upon until consumers enough could be secured to pay eight per cent per annum on the additional capital required to purchase the machinery for and put in practical operation the

lighting by electricity. The two grants might, therefore, have been in two separate ordinances and given to separate persons, firms or corporations. The operation of one would not interfere with that of the other, except perhaps on a question of financial success, but so far as the character of the two grants is concerned, each one is wholly separate and distinct from the other.

The city has never been under any obligation to take electric lighting from the corporation, even after the plant had been erected and was in operation. The exclusive character of the privilege, assuming it to exist by virtue of section 38 of the corporation law, already referred to, does not commence until the company has begun to do the thing required by the ordinance, as the consideration for the grant of the privilege. Nothing has been done by the plaintiff in error towards commencing work looking to the erection and operation of the electric plant. Upon this subject the Supreme Court of Florida stated as follows (28 Southern Reporter, 814):

"It appears from the pleadings that neither the Tallahassee Gas and Electric Light Company, nor the appellant company, ever established an electric light plant in the city of Tallahassee in pursuance of the authority conferred upon either of them. From the organization of the first company up to the time the gas plant was sold at judicial sale about six years had elapsed, and from the time of the judicial sale to the time the city began proceedings to enable it to establish an electric light plant about six years more elapsed. During all this period of time neither company attempted to construct an electric light plant as authorized by its charter. In the meantime that provision in the general incorporation law relating to exclusive privileges had been repealed by the legislature of 1891, and an act passed in 1897 specially authorizing cities and towns to establish gas and electric light plants to supply themselves and their citizens with light, and still later, in 1899, special legislative authority was given the city of Tallahassee to establish an electric light plant. Neither the Tallahassee Gas and Electric Light Company nor appellant company has acquired any vested right to erect an electric light plant by the investment of any money in any such

plant, and the question arises as to whether or not any constitutional right has been impaired by the repeal of the statute granting the alleged exclusive privilege, and by the legislation authorizing the city to do that which is a public benefit, and that which for some twelve years the companies have neglected to do as authorized by their charters and the city ordinance. We are unable to see that any vested right of either company, so far as the establishment of an electric light plant is concerned, is impaired by the legislation which authorizes the city to do that which it now proposes to do. In the first place, the statute, properly construed, does not grant the exclusive privilege in respect to the electric light plant as claimed. A grant of exclusive privileges to appellant's predecessor would be the grant of a franchise from the State, the possession of which would enable it to obtain a practical monopoly of the gas and electric light business in Tallahassee for the term specified. All such grants are strictly construed against the grantee, and nothing passes thereby but such as is clearly intended. *Saginaw Gas Light Company* v. *City of Saginaw*, 28 Fed. Rep. 529; *Florida, Atlantic & Gulf Central Railroad Company* v. *Pensacola & Georgia &c. Company*, 10 Fla. 145. Under the express language of this statute the exclusive privilege did not attach until the corporation was not only organized, but put into successful operation, and the privileges were to attach for twenty years from the time the corporation commenced to carry out in good faith the terms of its articles of incorporation. The condition upon which the exclusive privilege, so far as the electric light plant was concerned, attached, has never been performed, for the company has never been put into successful operation, so far as that branch of its business is concerned, nor has it ever commenced to carry out in good faith the terms of its articles of incorporation in regard to erecting an electric light plant. The first company never acquired the right to the exclusive privilege mentioned in the statute, because it failed to perform the condition precedent, and therefore it had no exclusive privilege to transfer to appellant company, so far as the electric light plant is concerned. In the next place, even if an exclusive privilege of

this nature, tending to establish a monopoly, was granted without such express condition precedent as we find in our statute, such grant does not become a contract or a vested right so as to be protected by the constitution of the State or the United States, until the company has, to say the least, begun to do the thing required by the charter as the consideration for the grant of such privilege. *Pearsall* v. *Great Northern Railway Company,* 161 U. S. 646.; *Louisville & Nashville Railroad Company* v. *Kentucky,* 161 U. S. 677. See also *Chincleclamouche Lumber & Boom Company* v. *Commonwealth,* 100 Pa. St. 438.

\*    \*    \*    \*    \*    \*    \*    \*

" Our attention is called to that clause in the seventh section of the city ordinance which required the company to put in electric lights only when sufficient consumers could be secured to pay eight per cent interest per annum on the additional capital required to purchase the machinery and put in successful operation electric lights. It would appear from this clause that from the beginning the company only intended to avail itself immediately of that provision of its charter authorizing it to erect a gas plant and to use the other power granted by its charter, together with the city ordinance, to shut out competition in its business from electric light companies, intending only to put in an electric light plant whenever that plant could be made to secure it an annual profit on its investment in that plant of eight per cent. It is quite apparent that the legislature never intended to secure to it any such right, but, on the contrary, intended the privilege to extend only so far as to secure the company from competition in matters wherein it had complied with its charter by being put into successful operation. We have seen that the city had no authority to grant exclusive privileges to use its streets for the purpose of furnishing light from gas and electricity, but even if it did have such power, it could not confer such exclusive right, and at the same time defer construction of the plant until such time as it could be made to pay eight per cent upon the investment. The effect of such a provision in an ordinance like the one we are considering is that the city will not permit any other person or corporation to use its streets for the public purpose of furnishing electric lights

for twenty-five years, but at the same time will not require the person or corporation to whom the exclusive privilege is granted to furnish such lights until such time as it can make an annual profit of eight per cent on its investment. The city has no such power over its streets, which are held by it in trust for the public benefit, *Florida Central & Peninsular Railroad Company* v. *Ocala Street & Suburban Railroad Company*, 39 Fla. 306; *Gonzales* v. *Sullivan*, 16 Fla. 791, 820, and, even if it did, so long as the grantee failed to invest money in a plant, the ordinance could be repealed or modified, being without consideration.

"We have not overlooked the fact that the first company performed its charter powers in part by erecting and operating a gas plant, and as to that plant, and the business connected therewith, it may have possessed exclusive privileges under the statute which could not be impaired by subsequent legislation, and it may be that such privileges passed to appellant through the judicial sale. As to that we express no opinion. But while the purpose of erecting both plants would be the same, in that they would both furnish light to the city and its people, yet they furnish a different light and require separate and different plants and instrumentalities for their operation. We think they are so distinct in character as to amount to separate undertakings, and they are so treated in the articles of association of both companies, and in the ordinance. Power to operate the one would not include power to operate the other, and permission to use the streets for one would not include permission to use them for the other. *City of Newport* v. *Newport Light Company*, 89 Ky. 454. The exclusive privileges as to the electric light plant could not have operated as a consideration for erecting the gas plant; for such privileges, under the statute were to attach to the electric light business only when that plant was put in."

We concur in the result arrived at in the foregoing extract from the opinion of the state court, and, in common with that court, we hold that there has been no impairment of any contract between the city and the plaintiff in error or its predecessor, and that the city has the right to avail itself of the priv-

ileges granted by the acts of 1897 and 1899 of the legislature already mentioned, so far as regards the electric lighting of the city.

The judgment is, therefore,

*Affirmed.*