**UNITED STATES v. 25.88 ACRES OF LAND, MORE OR LESS, IN BOROUGH OF BROOKLYN, KINGS COUNTY, et al.**

No. 598.

District Court, E. D. New York.

March 3, 1943.

Harry T. Dolan, Sp. Asst. to Atty. Gen. (Edward H. Murphy, Sp. Atty., Department of Justice, of Brooklyn, N. Y., of counsel), for the United States.

Shiland, Hedges & Pelham, of New York City (Arleigh Pelham and Edwin Guest, both of New York City, of counsel), for defendant Beard's Erie Basin, Inc.

William C. Chanler, Corp. Counsel, of New York City, for City of New York.

John J. Bennett, Jr., Atty. Gen. (Warren H. Gilman, Asst. Atty. Gen., of counsel), for the State.

ABRUZZO, District Judge.

A declaration of taking was filed in this proceeding in this Court on October 21, 1941, pursuant to Section 258a of Title 40 U.S.C.A., Act of February 26, 1931, ch. 307, Sec. 1, 46 Stat. 1421; and on October 22, 1941, a judgment on said declaration of taking was duly entered.

At the time of the filing of the declaration of taking, there was deposited in the registry of this Court the sum of $700,000 on account of the estimated just compensation and fair market value of the property taken.

Beard's Erie Basin, Inc., one of the defendants, appeared herein by its attorney and claims to be the party entitled to the sum so deposited and any further award which might be made. The Irving Trust Company is the trustee of a mortgage filed against this property on March 1, 1928. As trustee, it filed a notice of appearance in this proceeding. The City of New York also appeared as did many others which are unnecessary to recite since they are not pertinent to the claim in the present proceeding. The City of New York has not made a claim as to its being entitled to the award to be made.

Beard's, as claimant, has moved for an order directing the Clerk of this Court to pay to the Irving Trust Company, as trustee mortgagee, for the account of Beard's Erie Basin, Inc., the amount on deposit in the registry of this Court, to wit, $700,000, without prejudice to or waiver of the rights and claims of the claimant and said mortgagee, or either of them to proceed herein to have the just compensation for the land and improvements taken herein ascertained and awarded later in this proceeding.

The State of New York, upon the return of this motion, filed an adverse claim in writing. This claim in opposition to Beard's disputes the right of the claimant Beard's Erie Basin, Inc., to be compensated for the land and improvements acquired by the government, some of which was formerly under navigable waters; and asserts that it (the State) has a right to a portion of any award that might be made.

Thus, an issue at law has been presented relative to the rights of these parties to any preliminary award. There is sufficient authority for the Court to grant a preliminary award to any party in interest. Title 40 U.S.C.A. § 258a.

In view of the circumstances, the Court was unable to determine who the party in interest is and to whom the preliminary award should be made upon the affidavits submitted. The Court, with the consent of all parties, held hearings and took testimony in connection with the respective claims in order that it might properly pass upon the issue in dispute. A determination of this point is necessary before a final award can be made because the measure of damages to be applied will, to a greater or lesser extent, depend upon the decision to be made.

Beard's is attempting to sustain its right to its claim by the following chain of title: The upland title was in William Beard when he died in 1886, leaving a will with power of sale to his trustees. His surviving trustees and descendants conveyed to this claimant.

William Beard, it is claimed, received certain rights in the property herein (1) from letters patent granted by the State of New York, and (2) by legislative grants from the State.

By letters patent, dated June 25, 1857, pursuant to a resolution of the Commissioners of the Land Office, the State granted to William Beard and Valentine T. Hall certain land under water and between high and low water north of the bulkhead line of 1857 (claimant's exhibit 3). By letters patent dated September 1, 1885, pursuant to a similar resolution, the State granted to William Beard the land under water and between high and low water between the southerly boundary of the earlier grant and outer sea wall line (claimant's exhibit 4).

Both grants are similar in form and state that they are made "for the purpose of promoting the commerce of our State and for no other use or purpose whatsoever, and with the reservations and upon the conditions hereinafter mentioned", and reserve to the People the right of using the property "until the same shall have been actually appropriated and applied to the purposes of commerce, by erecting a dock or docks thereon". The grantee was given ten years in the case of the first grant and five years in that of the second to actually appropriate the premises to the purposes of commerce for which it was granted.

Various grants were made by the legislature to the upland owners in the area which includes the premises here involved, giving the right "to erect, construct and build docks, wharves, bulkheads, piers and basins on the land under water in front of their lands in the City of Brooklyn. These grants began with Chapter 202 of the Laws of 1847, followed by Chapter 83 of the Laws of 1851, Chapter 203 of the Laws of 1856 and Chapter 184 of the Laws of 1851. By Chapter 763 of the Laws of 1857, bulkhead and pier lines for the Port of New York were established. Then followed Chapter 480 of the Laws of 1862 giving William Beard and others the right to build and maintain seawalls or breakwater piers and Chapter 481 of the Laws of 1862, altering the outer seawall line, and Chapter 856 of the Laws of 1866, authorizing William Beard and others to construct and maintain a bulkhead with solid filling on the bulkhead line of 1857. Chapter 702 of the Laws of 1873 permitted the construction and maintenance of bulkheads, wharves and piers and to fill in same on the lands under water in front of grantee's lands to the exterior bulkhead and pier lines. Chapter 491 of the Laws of 1884 attempted to ratify and confirm grants by prior acts with respect to the property in question "in fee simple". There were other grants at later dates but they were similar in form to those just recited and it is unnecessary to set them forth at great length.

In its lengthy brief, the State of New York makes two broad claims. It contends, first, that the letters patent, dated June 25, 1857, and September 1, 1885, gave a grant limited to its terms, to wit, for use by Beard's for the purpose of "promoting commerce of our State" only.

Secondly, the State broadly asserts that the legislative grants commencing in 1847 and including those up until 1884 were defective and were therefore ineffective. This claim is based upon the contention by the State that they were passed by only a three-fifths vote of the legislature where as a matter of law, to make them effective and operative, a two-thirds vote by the legislature was necessary. It is conceded they were passed by a three-fifths vote and that a two-thirds vote was necessary.

This latter argument of the State is disposed of in favor of the claimant in view of the decision in First Construction Co. v. State, 221 N.Y. 295, 116 N.E. 1020; Id., 110 Misc. 164, 180 N.Y.S. 241, which involved property immediately adjoining Beard's Erie Basin on the east. The upland owner of that property was the Estate of William Beard under the chain of title in evidence here, and the rights of the First Construction Company as grantee and assignee of the Estate of William Beard under the same legislative acts here involved were considered and adjudicated.

The State raised the identical defenses in that case as in its second contention herein, claiming the statute of 1884 was unconstitutional. This statute sought to ratify and confirm any defects in previous letters patent and legislative grants and particularly the ones in the instant case wherein and whereby Beard's is making claim for certain rights in the property acquired by the government. In addition it sought to convey to Beard's grants of title to land under water.

This latter phase of the statute was ruled to be unconstitutional, but the Court found that the part of the enactment which sought to confirm and ratify previous grants by letters patent or legislative acts was constitutional.

By its decision, the Court gave force and effect to that part of the statute. It adopted the principle, and rightfully so, that if one portion of a statute is unconstitutional, there is no reason to reject the entire enactment.

The opinion broadly held that the letters patent and legislative acts gave to Beard's and the others the privilege to build wharves, et cetera, and fill in lands, for the purpose of commerce. The wharves and docks, of course, were for public use. Title to land under water was not at issue in this case. However, it clearly defines the rights obtained. The decision states in part

at page 316 of 221 N.Y., at page 1026 of 116 N.E.:

"I think, however, that the privilege amounts to more than this, and that an act granting the right to fill in lands under water, and thereby acquire title to the same, gives an inchoate, vested interest in the lands described which is a property right, and of which, unless forfeited or lost in some way, the grantee cannot be deprived without compensation. This view is supported in various ways: In the first place the rights which a grantee named in such an act acquires thereunder are quite analogous to those which a riparian owner upon public waters enjoys. In the latter case we hold under principles of common law that the riparian owner has certain rights in and over the foreshore of which he cannot be deprived without compensation. Rumsey v. New York & N. E. R. Co., 133 N.Y. 79, 30 N.E. 654, 15 L.R.A. 618, 28 Am.St.Rep. 600. In the present case the Legislature by grant gives certain rights and privileges in and over the lands under water, and it would seem as though these also should be protected against destruction without compensation."

Another excerpt from pages 317 and 318 of the same opinion [116 N.E. 1026] relates:

"It, perhaps, is * * * unnecessary to give a specific name to this right, but if we are to do this, it may as aptly be termed a franchise as anything else. Trustees of Southampton v. Jessup, 162 N.Y. 122, 56 N.E. 538. I think it possesses the nature of a franchise in one respect which may be of importance in this case. The only motive in the nature of a consideration for the grants which were made to claimant's predecessor was the one that he would exercise the privilege which was granted and by filling in the lands and erecting docks contribute to the commercial resources and facilities of the city of Brooklyn and save the state the expenses and uncertainties which it might incur if it embarked on this undertaking. Williams v. Mayor, etc., of N. Y., 105 N.Y. 419, 436, 11 N.E. 829. This, I have no doubt, was a necessarily implied condition of the grants, and for a failure to comply therewith they could have been forfeited by the state. This principle, as applicable to the present situation, can be no better stated than was done in respect of a franchise in New York Electric Lines Co. v. Empire City Subway Co., 235 U.S. 179, 193, 35 S.Ct. 72, 76, 59 L.Ed. 184, Ann.Cas.1915A, 906, and where it was said: 'Grants like the one under consideration are not nude pacts, but rest upon obligations expressly or impliedly assumed to carry on the undertaking to which they relate. See [In re] Binghamton Bridge, 3 Wall. 51, 74, 18 L.Ed. 137; Pearsall v. Great Northern Railway Co., 161 U.S. 646, 663, 667, 16 S. Ct. 705, 40 L.Ed. 838. They are made and received with the understanding that the recipient is protected by a contractual right from the moment the grant is accepted and during the course of performance as contemplated, as well as after that performance. The case of Capital City Light & Fuel Company v. Tallahassee, 186 U.S. 401, 22 S.Ct. 866, 46 L.Ed. 1219, to which the defendant in error refers, is not opposed. There the complainant, upon the ground of an exclusive privilege, sought to enjoin a municipality from operating its own electric light plant. Although ten years had elapsed since the complainant's grant, the complainant had done nothing whatever to establish an electric light business, and under the express terms of the statute the exclusive privilege had not attached. 186 U.S. 410, 22 S.Ct. 866, 46 L. Ed. 1219.

"But, while the grant becomes effective when made and accepted in accordance with the statute and the grantee is thus protected in starting the enterprise, it has always been recognized that, as the franchise is given in order that it may be exercised for the public benefit, the failure to exercise it as contemplated is ground for revocation or withdrawal. * * *'"

The statute of 1884 therefore confirmed and ratified the grants made from 1847 down to and including 1884; and the Court is bound to accept this case as the law to be applied in this proceeding. Hence, it must follow that the second contention raised by the State has not been sustained.

As to Beard's right to title to the land under water, opposition to which is set forth in both arguments by the State, it might be well to set forth part of the language contained in the letters patent:

"The People of the State of New York by the Grace of God Free and Independent: To all to whom these presents shall come, Greeting: Know ye, that pursuant to a resolution of the Commissioners of our Land Office, for the purpose of promoting the Commerce of our said State, and for no

other object or purpose whatsoever, and with the reservations and upon the conditions hereinafter mentioned, We have given and granted, and by these Presents do give and grant to William Beard, his heirs and assigns, the land under water, and between high and low water mark, described as follows, to wit * * * (hereinafter follows a lengthy description of the property which would serve no purpose in being included) * * *

"Excepting and Reserving to all and every the said People, the full and free right, liberty and privilege of entering upon and using all and every part of the described premises, in as ample a manner as they might have done had this power and authority not been given, until the same shall have been actually appropriated and applied to the purposes of Commerce, by erecting a Dock or Docks thereon: And these Presents are upon the Express Condition, that if the said William Beard, his heirs or assigns, shall not, within Five years from the date hereof actually appropriate and apply the above described premises to the purposes of Commerce, by erecting a dock or docks thereon, and filling in the same, then these Presents and everything herein contained shall cease, determine and become void. * * *"

■ The construction and effect of the grant involved and the covenants depend chiefly on the extent of the power of the State to part with title to property under navigable waters to private persons, free from subsequent regulatory control of the water over the land and the land itself. That is a state question, and we must determine it from the law of the State, as it was when the grants were executed, and from the decisions of the state court then and since made. Appleby v. City of New York, 271 U.S. 364, 46 S.Ct. 569, 574, 70 L.Ed. 992.

The latter opinion contains a quotation from Lansing v. Smith, 4 Wend., N.Y., 9, 21 Am.Dec. 89, which states in part:

" * * * But there can be no doubt of the right of Parliament in England, or the Legislature of this state, to make such grants, when they do not interfere with the vested rights of particular individuals. * * *

"Hence the Legislature as the representatives of the public may restrict and regulate the exercise of those rights in such manner as may be deemed most beneficial to the public at large: Provided they do not interfere with vested rights which have been granted to individuals."

■ It is apparent from these decisions that when the legislature deemed it to be in the public interest to grant a deed in fee simple to land under tidal waters and exclude itself from its exercise as sovereign of the jus publicum, that is, the power to preserve and regulate navigation, it might do so; but that the conclusion that it had thus excluded the jus publicum could only be reached upon clear evidence of its intention and of the public interest in promotion of which it acted.

It therefore becomes imperative for this Court to make its decision based upon the statutes and the law as interpreted by the decisions of the highest courts of this State.

There is no dispute and the State makes no claim that the conditions subsequent contained in the letters patent and legislative grants were strictly complied with by the claimants. A dock or docks were erected upon the land within the time prescribed by the grants and they were used for the purpose of commerce by the public at large right up to the time the United States condemned this property and took title to same. All of this is uncontradicted.

This Court, therefore, deems it necessary to review some of the leading cases decided by the Courts of this State. Only by such a review can a decision be determined that will effectually solve this troublesome and important question. This is said advisedly, for the Court is aware that this same point is to be raised by the State in numerous other proceedings now pending in this Court.

The Court, too, is not unmindful of the fact that the State will continue to raise the defense that no matter what the grants or statutes attempt to accomplish the State can not constitutionally divest itself of title to land under water by grants, statutes or otherwise, because the land under water is held in trust for all the citizens of the State of New York.

In the First Construction case, supra, title to land under water was not involved, but the decision does hold that a legislative grant to an upland owner bordering on public tidewater to fill in and erect docks on lands lying under water in front of him while it does not convey title in fee, it does give him more than a license. For want of a better term, the Court called it a fran-

chise. It conveyed an inchoate right in the lands to be filled in and if the upland owner fills in the land he is entitled to compensation.

In New York Foundation v. People, 259 N.Y. 54, 181 N.E. 12, the patent grant by the Land Office was almost identical in language as that with which we are now dealing.

The New York Foundation instituted the action, seeking to bar the State from any claim to any estate or interest in the property described in the complaint. The sufficiency of the complaint was before the Court. In its opinion, the Court cited the Matter of City of New York, Upper N. Y. Bay, 246 N.Y. 1, 157 N.E. 911. This case holds that grants apparently identical in form conveyed a fee and the conditions contained in the grants were conditions subsequent. Grants or patents issued for the "purposes of commerce" gave to the patentees or grantees unrestricted title subject only to regulations of commerce and navigation by the State.

In People v. Wainwright, 237 N.Y. 407, 143 N.E. 236, the controversy was over the title to land under water in Jamaica Bay, patented to John W. Wainwright, the upland owner. The grant in principle is identical with the one at issue.

Wainwright was issued letters patent in 1907. It had the usual clause that the patent granted him certain rights with the proviso that he make certain improvements for the public use within a prescribed time. Wainwright admittedly did not comply with the terms of his patent grant.

Two years later, in 1909, an enactment was passed granting to the City of New York certain patent rights in and to the land included in the Wainwright letters patent. The State brought an action against Wainwright to have his letters patent declared null and void for failure to comply with the conditions of his patent grant. This action was properly brought. The City, by virtue of its grant under the statute of 1909, claimed title in fee to the land under water. The opinion pointed out that when the Act of 1909 took effect the State had no right, title or interest in the land described in the Wainwright letters patent and, therefore, the City acquired no interest in the Wainwright property because the Wainwright patent was still in existence. Since the letters patent contained a condition subsequent, the right to take advantage of it was not an estate, an interest in real property, nor at common law an assignable chose in action. The State, by enactment, could not grant to the City any right, title or interest to the land under water until the Wainwright letters patent issued in 1907 were set aside by the State's instituting and prosecuting an action in Court.

This decision is significant because even though Wainwright defaulted and admittedly did not make the required improvements, he still retained title until it was vacated by Court order.

■ The State at all times has the right to institute an individual action to forfeit any letters patent or legislative grants if the conditions contained in these patents are not complied with. People v. Wainwright, supra, declared that having a grant rendered null and void for breach of subsequent conditions is not an interest in lands but a chose in action.

In Benedict v. Lunn, 244 N.Y. 373, 155 N.E. 677, 679, the claimants or their predecessor received letters patent from the State of New York, dated February 10, 1908, conveying certain lands under the waters of Westchester Creek, in front of and adjacent to their upland, in the Borough of Bronx, in the City of New York. While the point involved is not analogous to the case at bar, the decision contains very illuminating language, to wit: "Under similar grants, with like reservations, it has been held that fee title was conveyed which might be divested by the entry of the state for nonperformance of the condition. The fee title, however, remained in the grantee until divested by action of the state."

The foregoing are some of the cases cited by the claimant Beard's in support of its position.

The citations set forth by the State of New York are not applicable nor do they support a finding or ruling in its favor. A review of some of the more important of these opinions, cited by the state, follows:

In Thousand Island Steamboat Co. v. Visger, 179 N.Y. 206, 71 N.E. 764, the issue was whether under certain grants a riparian owner obtained exclusive rights to use of docks erected to the exclusion of the public.

It was held in Harper v. Williams, 110 N.Y. 260, 18 N.E. 77, that the plaintiff obtained the right to make a wharf or dock not for the private but for the public use.

· The question of assessing taxes on property held under grants was involved in Smith v. Mayor, 68 N.Y. 552.

In People v. Tompkins-Kiel Marble Co., 269 N.Y. 77, 199 N.E. 10, the Commissioners of the Land Office by letters patent granted George Brooks property for the purpose of promoting commerce and power to erect any dock or docks on the land under water. By the same deed, he was also granted the land under water with the full and free right, liberty and privilege of entering upon and using all and every part of the premises. The deed provided that "if the said George Brooks his assigns shall not within Five years from the date hereof actually appropriate and apply the above described premises to the purposes of Commerce, by erecting a Dock or Docks thereon and filling in the same, then these Presents and everything herein contained shall cease, determine and become void." Brooks was owner of the uplands adjacent to the land under water. Without exercising his power to erect a dock or docks he conveyed the uplands and through mesne conveyances title passed to one John Good. The latter applied to the Commissioners of the Land Office for a new grant of the land under water adjacent to the same exceptions, reservations and conditions as the earlier grant.

In 1932, the State began an action to have these patents declared null and void. Brooks had not complied with the conditions of his patent. Whether his conveyance of title to Good and the subsequent letters patent issued to Good had the effect of passing title to land under water to Good was a question raised by the State's action to have the letters patent declared null and void.

The action of the State was predicated upon the theory that Good stood in the "same shoes", so to speak, as Brooks. Since the latter had defaulted in carrying out the details of his letters patents, the State claimed that Good was chargeable with carrying out the terms contained in Brooks' original grant.

· ■ It is quite clear that the weight of authority is in favor of the contention made by the claimant Beard's. Title to the land under water pursuant to the letters patent in question passed to Beard's The Court can find nothing in the decisions cited by the State of New York to sustain a determination to the contrary.

■ The argument of the State that Beard's title, if it had one, has been forfeited because it can no longer use the property for the purpose it was granted is unsound. The letters patent were "commerce" grants as distinguished from grants "for beneficial enjoyment". The State can claim no benefit from a cessation of use caused by sovereign action. The interest · of the claimant Beard's has not been surrendered by the operation of law. This theory has been amply adjudicated.

Where an estate was limited under a deed to endure "so long as" the premises were devoted to religious purposes, the property was condemned by the City and it was held against the claim of the heirs of the grantor that the grantee was entitled to the entire award. In that case, First Reformed Dutch Church of Gilboa v. Croswell, 210 App.Div. 294, 206 N.Y.S. 132, 133, it was said: "The premises in question did in fact cease to be used for the maintenance of a church thereupon. The disuser, however, was a consequence, not a cause, of a loss of title by the plaintiff. The city of New York, in condemnation proceeding, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have continued forever. At that moment the rights of the heirs were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken."

In a case where property was deeded to a city for use as a public library on condition that if used for any other purpose it should revert to the grantor, and the property was condemned by the State, it was held that the heirs of the grantor had no interest in the award, the decision stating: "A use of the property 'for any other purpose' than for a public library was obviously to be such a use voluntarily made

by the city." State v. Federal Square Corporation, 89 N.H. 538, 3 A.2d 109, 112.

It follows, therefore, that Beard's Erie Basin, Inc., is entitled to the entire award to be made for this property.

Settle order on notice.