First Construction Company of Brooklyn, Claimant, v. State of New York.

Claim No. 885-A.

(State of New York, Court of Claims, January, 1920.)

Eminent domain — appropriation by the state of lands and interests in lands under water — when owner's rights in lands under water not forfeited — damages — awards.

On April 12, 1912, the state of New York pursuant to statute appropriated from the estate of B. certain lands and interest in certain lands on the shore of and under the waters of Gowanus bay, a part of New York harbor. The trustees of B. assigned their claim for damages to claimant. Upon appeal to the Court of Appeals from a previous award in this case, it was held that inasmuch as neither B. nor his successors in interest had filled in said lands under water they had never acquired the title in fee simple thereto, but only " an inchoate, vested interest in the lands described which is a property right and of which, unless forfeited or lost in some way, the grantee cannot be deprived without compensation." 221 N. Y. 316. Evidence considered and held to show that neither B. nor his trustees had ever abandoned the rights in said property vested in him by legislative grant and such rights had not been forfeited on or before April 12, 1912, but that on that day such vested rights existed in B.'s trustees in full force and virtue and have never since been questioned, withdrawn, forfeited or abandoned.

The property right of B. in said lands under water having a very substantial market value and at the time of the appro-

priation thereof by the state capable of being transferred by deed from his representatives to a private purchaser, immediately passed back to the state, when the appropriation map and notice were served upon said representatives.

A contention on the part of the state that the condition subsequent upon which the franchise was held by B., was broken prior to April 12, 1912, not agreed to and claimant held entitled to an award in an amount representing the fair and reasonable market value of the land within the appropriated parcel, either original upland or filled in, at the date of the appropriation together with interest thereon from said date.

CLAIM for value of lands and interest in lands under water appropriated by the state.

Charles C. Clark (William N. Dykman, Charles E. Hughes and Timothy J. Shea, of counsel), for claimant.

James Gibson, Jr., Edward J. Mone and John D. Monroe, deputy attorneys-general (Arnold J. Potter, of counsel), for state of New York.

ACKERSON, P. J. On or about April 12, 1912, the state of New York, pursuant to law, appropriated from the estate of William Beard certain lands and interest in lands on the shore of and under the waters of Gowanus bay, in the twelfth ward of the city of Brooklyn, said Gowanus bay being a part of New York harbor.

The trustees of William Beard assigned their claim for damages against the state of New York by reason of such appropriation to this claimant on or about March 17, 1913. This claimant thereupon, and on or about March 21, 1913, filed the claim herein demanding an award against the state of New York for about $3,000,000 as the value of the property taken by the state in the aforementioned appropriation.

The questions of law arising in connection with said claim, including the title to the property, were

referred to the Hon. Albert Haight for determination. He found the claimant to be the owner in fee of 1,422,022 square feet of the land appropriated. The Board of Claims accepted such finding and made an award to claimant of $1,081,516.50 as the fair and reasonable market value of the upland and land under water appropriated.

The state appealed to the Appellate Division and the award was unanimously affirmed. The state appealed from the judgment of the Appellate Division and the Court of Appeals reversed the judgment of the Appellate Division and the award made by the Board of Claims, except and in so far as those tribunals had found that the claimant was not entitled to an award for the land under water in the Hicks street and Henry street basins, and also for the land within the lines of Henry street and Columbia street, and sent the case back to the Court of Claims for a new hearing.

The Board of Claims made its award upon the theory that the rights granted by the legislature to William Beard in and to the lands adjacent to his upland and under the waters of Gowanus bay vested in him the title to such lands in fee simple.

The Court of Appeals, however, did not accept this view of claimant's rights in the lands in question. The learned chief judge of that court has held in a very able opinion, from which only one of his colleagues dissented, that William Beard never acquired the title in fee simple to the lands under water in Gowanus bay. *First Construction Co.* v. *State of New York*, 221 N. Y. 295.

While conceding that if William Beard or his successors had filled in the lands in question they would thereby have become possessed of the title in fee simple in accordance with the holding in *Williams*

v. *City of New York,* 105 N. Y. 419, yet inasmuch
as they had not done so, the only rights which were
secured to them are described in the said opinion of
Chief Judge Hiscock as '' an inchoate, vested interest
in the lands described which is a property right and
of which, unless forfeited or lost in some way, the
grantee cannot be deprived without compensation.''
*First Construction Co.* v. *State of New York,* 221
N. Y. 316.

The learned chief judge then proceeds to enunciate
principles which this court recognizes to be for its
guidance and consideration in reaching a proper
award herein on the retrial of this claim.

He uses the following language: '' The value of a
franchise to acquire title to land by filling in will not
necessarily be the same as the value of the fee before
the land has been filled in. The value of the right in
this respect will be the value of the land when filled
in less the cost of filling and the addition of value as
the result of filling in may be greater or less than the
cost of the latter operation. In addition, there may
be other features which will differentiate the value of
a fee and the value of a right to acquire a fee which
is subject to continuing conditions and continuing
obligations.

'' For instance, the liability to forfeiture of claim-
ant's rights for non-user has been somewhat discussed
by counsel and considered by us. If it should appear
on the new hearing which is necessary that at the
time of the appropriation by the state claimant's
franchise had become subject to forfeiture or to a
*bona fide* serious claim of forfeiture, this might be
claimed to be an element to be considered in fixing
its market value in these proceedings. While we have
deemed it necessary in determining the character of
claimant's rights to indicate our views in respect of

a liability to forfeiture for non-user, we shall not express any opinion on the question whether the findings indicate a liability to forfeiture at the time of the appropriation or whether liability to such forfeiture or to a serious claim thereof, if established, could properly be considered in these proceedings in fixing values." *First Construction Co.* v. *State of New York,* 221 N. Y. 321, 322.

With this admonition from the court of last resort regarding the law applicable to this case before us, we proceed in an effort to determine in conformity therewith the questions at issue herein as they are now presented:

I. Had William Beard or his trustees abandoned the franchise right received from the state to fill in and improve the property in question and thereby acquire the ownership of the same in fee simple on the 12th day of April, 1912?

To this question we answer no. It is true that the property had not been improved as the franchise contemplated. But there is not a particle of evidence in the case to indicate that William Beard or his trustees ever expressed an intention to abandon the rights in this property which the different acts of the legislature had vested in him. Nor is there any evidence from which such an intention could be implied. On the other hand, all of his acts and statements in reference to this property, so far as the evidence discloses, reveal the belief on his part that he was in full possession of all the rights conferred upon him by the different acts of the legislature in reference thereto and that it was his intention to improve the property as soon as the business there would warrant the vast expenditure of so doing. That he had already expended a great deal of money in improving and preparing to improve this property.

Abandonment is a question of intent as well as non-user. *Welsh* v. *Taylor,* 134 N. Y. 450.

The record here not only is absolutely devoid of any evidence of intent to abandon, but it is filled with evidence to the contrary. It does not disclose a case of non-user but discloses that William Beard was in continual possession of this property, paid taxes on it, built a pile pier there about seven hundred feet long, dredged different parts of it, filled a small portion of it, made extensive plans for its improvement, leased portions of it, sold parts of the property to Poillon and Downey & Lawrence to be developed into shipyards, which was done, and filled much of the low adjacent upland preparatory to the improvement of the land under water in question.

We, therefore, reach the conclusion, which seems to us to be irresistible from the evidence in the case, that neither William Beard nor his trustees ever abandoned the rights vested in him by the legislature of this state.

II. We now come to the next question and that is, had the rights in this property which the legislature granted to William Beard and which became fully vested in him on the 6th day of June, 1884, been forfeited on or before April 12, 1912? To this we also answer in the negative.

Neither on April 12, 1912, nor at any time since June 6, 1884, had the rights of William Beard in and to this property, as defined by different acts of the legislature, ever been questioned so far as the evidence in this case reveals. And there can be no doubt that during all that time William Beard as well as his trustees supposed they owned the fee. Neither William Beard nor his trustees could have been divested of their rights in this property by means of forfeiture except by an act of the legislature or a

judicial decree declaring such forfeiture. *Atlantic & Pacific R. R. Co.* v. *Mingus,* 165 U. S. 430; *New York Electric Lines* v. *Empire City Subway,* 235 id. 195.

It is conceded that no such legislative act or judicial decree ever had existence, and the Court of Appeals has held that " the appropriation of this land under the Barge Canal Act did not amount to a proceeding to forfeit any rights which the claimant might have in said premises." 221 N. Y. 324.

We conclude, therefore, that on the 12th day of April, 1912, the rights to this property, which became vested in William Beard on the 6th day of June, 1884, by reason of the several acts of the legislature of this state, existed in his trustees in full force and virtue, and that they had never been questioned, withdrawn, revoked, forfeited or abandoned.

We further conclude that when the appropriation map and notice herein was served upon the representatives of William Beard the interest which he had received in this property from the state and which the Court of Appeals has described as " an inchoate vested interest in lands  *  *  *  a property right " immediately passed back to the State of New York. *Kahlen* v. *State,* 223 N. Y. 383.

That this property right of William Beard so taken by the state was capable at that time of being transferred by deed from his representatives to a private purchaser and had a very substantial market value.

III. At this point we are presented with the contention by the state that the condition subsequent upon which the right or franchise was held by William Beard was broken prior to April 12, 1912, and that, therefore, this court may and should now adjudge a forfeiture.

We cannot agree with the state's contention that the condition subsequent had been broken prior to

April 12, 1912. But conceding, for the sake of the argument, that it had been, then even in that event, we would have no power to declare a forfeiture at this time. We must make an award for the value of what the state took on April 12, 1912. It took " an inchoate vested interest in lands * * * a property right " which at that time had a substantial market value because it was in full force and virtue and had never been attacked, never been questioned nor never been declared forfeited. There is, therefore, now no magician's wand, no legal legerdemain which the court can summon to its assistance which would enable it more than seven years after this appropriation to lawfully declare that an unassailed and existing property right which the state took on April 12, 1912, had neither existence nor value.

As was said in the case of *Atlantic & Pacific R. R. Co.* v. *Mingus, supra:* " If the condition subsequent were broken, that did not, *ipso facto,* produce a reverter of the title. The estate continued in full force until the proper step was taken to consummate the forfeiture." It is conceded in this case that no steps of any kind were taken prior to the appropriation to consummate a forfeiture of this franchise. It must, therefore, in our judgment be considered as one of the established facts in this case that the state appropriated from the estate of William Beard on the 12th day of April, 1912, the franchise right which he had received under various legislative acts and which became vested in him on June 6, 1884, and also that at said date of appropriation this right unimpaired and unimpeached was held by the legal representatives of William Beard.

The only question left for us to determine, therefore, is the fair and reasonable market value of such franchise right, together with the small portion of

Court of Claims, January, 1920.      [Vol. 110.

upland included in the appropriation on the 12th day of April, 1912.

In this connection we are to consider whether or not the condition subsequent had been broken and the franchise right, therefore, subject to forfeiture; and if not absolutely subject to forfeiture whether or not it was subject to a " serious claim of forfeiture." And if so subject to forfeiture or to a serious claim of forfeiture what effect, if any, that had on the market value of the franchise.

After a careful review of the evidence in this case and of the nature, object and purposes of the state's grant to William Beard, we reach the following conclusions:

It has been the policy of the state to grant to riparian owners its rights in the lands under water adjacent to their upland out to a certain fixed line. A right which is referred to in the opinion of Judge Finch in *Williams* v. *City of New York, supra,* as " a right useless to itself."

This action on the part of the state was taken for the specific purpose of encouraging the owners of the waterfront or their grantees to improve such waterfronts as soon as it was feasible to do so and the demands of commerce required it. It was the only way in which these improvements could be made with any advantage to the state. And when the state added to the ownership of riparian lands the right to acquire the title to the lands under water adjacent thereto by filling them in out to a certain fixed bulkhead line it made every inducement possible for the private citizen to improve such property for the benefit of commerce.

This right or franchise greatly differed from many others given by the sovereign to the citizen. No definite time was fixed for its performance. It was for

the performance of a right which the state did not care to exercise; which could not be exercised by the citizen without the consent of the state; which was for the improvement of the public domain, and to promote the prosperity of the commonwealth; it contemplated the expenditure of money not by the state but by the citizen; the citizen was not to be recompensed for such expenditure from the public treasury but from the emoluments and revenues derived from charges for the use of such improvements by the agencies of commerce.

Such a right, therefore, it seems to us, in order to accomplish the purpose contemplated by the investment of private capital, must have been intended by the legislature as reasonably permanent in nature, a fairly fixed and valuable increment to the upland ownership. Otherwise, it seems to us the tenure of the holding would be altogether too uncertain and precarious to warrant the upland owner in expending the necessary time and money, perhaps over a long period of years, in preparing and planning for the ultimate and finished improvement.

Of course, it can readily be conceded that if the original owner or his representative refused to take advantage of this franchise or to convey it to somebody who would when it was reasonable to expect that the opportunities for commerce afforded by the improvement of the waterfront would be availed of to such an extent as to warrant the expenditure of making the improvement, then and in that event the state might step in and proceed to forfeit the right which it had granted. But no such condition as that existed in the case at bar. William Beard owned an extensive frontage on Gowanus bay of which the property in question was but a small part. He spent a lifetime and hundreds of thousands of dollars, as the

evidence in this case reveals, in improving that water-front and procuring others to improve it. The state had granted to him the right to fill in all the lands under water and improve the same adjacent to his upland. He had taken advantage of that right throughout his entire waterfront except in the com-paratively small frontage appropriated. He had improved this to some extent, and filled in much low upland adjoining it preparatory to improving it, as has been heretofore referred to. He had prepared extensive plans for the improvement, as his franchise contemplated, and endeavored to get business to war-rant the expense, and, failing in that, had endeavored to sell it to somebody who would improve it. There never were, up to the date of this appropriation, any railroad facilities which were accessible to this prop-erty. It was more or less isolated, which, in our judg-ment, had much to do with Beard's failure to bring business to this point.

Whether we consider that Beard held this appro-priated parcel under a separate and distinct franchise from the rest of his waterfront or whether he did not, in either case it seems clear to us that in endeavoring to arrive at a proper and just conclusion as to whether this franchise was subject to forfeiture or to a serious claim of forfeiture, we must take into consideration his entire waterfront, what he did there, what he tried to do with this particular parcel, what were the demands and opportunities for commerce there, and all the facts and circumstances surrounding this locality which throw any light on those questions.

On one side of this property was the Erie basin, which Beard had constructed, filled with wharves and drydocks and protected by an immense breakwater inside of which ocean-going vessels could be moored,

docked and repaired. On the other side of it were the shipyards of Downey & Lawrence. Beard had induced these men to come there and improve that portion of the waterfront.

There did not seem to be anything left for this particular waterfront to be developed for except a freight transfer depot and shipping point. It could not be advantageously used for this purpose without railroad connection, and it had none.

We must consider the subject of forfeiture with the same hard common sense which governs the ordinary business affairs of every-day life. The state without any cost to itself had made this inducement to the upland owner to improve his frontage. It could not revoke, withdraw or forfeit this inducement without defeating the very object for which it was intended.

It could not be presumed that the upland owner would make this expensive improvement until such time as he could receive a fair return on the money so invested. We are convinced from all the evidence in the case that such time had not arrived at the date of this appropriation, and that, therefore, the reasonable time in which Beard or his successors must exercise this franchise had not expired.

After a careful consideration of all the evidence in the case, therefore, we have reached the conclusion that the fair and reasonable market value of the land within this appropriated parcel, either original upland or filled in at the date of the appropriation, was worth ninety-seven cents per square foot, and that the cost of bulkheading and filling in the land under water as contemplated by the terms of the franchise was $400,000.

Upon this basis, therefore, we reach the following values:

| | |
|---|---|
| 1. 18,600 square feet of original upland at ninety-seven cents per square foot .......................... | $18,042 00 |
| 2. 82,655 square feet of filled-in or made land at ninety-seven cents per square foot ...................... | 80,175 35 |
| 3. 1,339,020 square feet of land under water after it is filled in at ninety-seven cents per square foot, less $400,000, the cost of filling and bulkheading same ................ | 898,849 40 |
| | $997,066 75 |

We find the total value of the appropriated parcel, therefore, under the rules laid down by the Court of Appeals for determining the same, as we understand them, and as applied to the facts which we consider to be established by the evidence in this case, to be $997,066.75. The claimant is, therefore, entitled to an award for that amount against the State, together with interest on the same from the date of the appropriation, April 12, 1912.

In conclusion, it may be said for the benefit of the counsel who tried this case that the findings of fact and conclusions of law and the opinion herein were prepared in their present form and agreed upon by Judges Ackerson and Paris, who heard the case. Judge Paris, however, died a few days before the date that had been set to meet in Albany and sign the same and file them with the clerk of this court.

Webb, J., concurs.