## BEARD'S ERIE BASIN, Inc., et al. v. PEOPLE OF NEW YORK.

### No. 332.

Circuit Court of Appeals, Second Circuit.

May 8, 1944.

488

Warren H. Gilman, Asst. Atty. Gen. (Nathaniel L. Goldstein, Atty. Gen., and Wendell P. Brown, First Asst. Atty. Gen., on the brief), for claimant-appellant.

Arleigh Pelham, of New York City (Shiland, Hedges & Pelham, of New York City, on the brief), for petitioner-appellee Beard's Erie Basin, Inc.

Davies, Auerbach, Cornell & Hardy, of New York City (Martin A. Schenck and Edwin Guest, both of New York City, of counsel), for petitioner-appellee Irving Trust Co.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is a dispute as to the right to the condemnation award for certain lands, otherwise known as Beard's Erie Basin, in and about Gowanus Bay in the Borough of Brooklyn. On October 21, 1941, the United States of America filed a declaration of taking, pursuant to the provisions of 40 U.S.C.A. § 258a, and the court below entered judgment at once on the declaration. At the same time the United States deposited the sum of $700,000 with the court as the estimated just compensation of the property taken. Beard's Erie Basin, Inc., thereupon entered claim for the sum so deposited and any future award which might be made, and petitioned the court to pay the $700,000 for the account of Beard's to the Irving Trust Company, as trustee of a mortgage filed against the property on March 1, 1928. The Irving Trust Company filed a similar petition as mortgage trustee. The People of the State of New York, upon the return of these petitions, filed an adverse claim in writing, disputing Beard's right to the whole amount and asking for one-half of any award that might be made. After hearings, the court below in a written opinion, United States v. 25.88 Acres of Land, etc., D.C.E.D.N.Y., 49 F.Supp. 250, found in favor of the petitioners and awarded to them any and all compensation for the condemned property. From this judgment the State presses the present appeal.

Beard's title to the lands in question runs back to William Beard through the trustees of the latter's will. That the trustees received whatever rights in the lands Beard himself possessed is unquestioned, and has been so decided in the state courts with respect to lands adjoining those taken. First Const. Co. of Brooklyn v. State, 110 Misc. 164, 180 N.Y.S. 241, affirmed 194 App.Div. 608, 186 N.Y.S. 159. Hence our attention can be directed solely to the nature of William Beard's original interest. The condemned lands may be divided roughly into three types: (1) the original upland; (2) land which was originally under water, but which since its acquisition by William Beard has been filled in; and (3) land which is still under water at the present time. At the outset, it can be noted that there is no dispute concerning William Beard's ownership of the original upland fronting on the Bay. This ownership, traced back to a grant from the town freeholders in 1695 and Charter from the King in 1698, was recognized over the years by the various legislative grants and grants by letters patent of lands under water, which we shall consider later and which could legally be made only to an upland owner, and was specifically found in the case of First Const. Co. of Brooklyn v. State, supra, 194 App.Div. at pages 617, 618, 186 N.Y.S. at pages 166, 167. The controversy thus centers about lands under water acquired by William Beard in front of his original upland, whether they be now filled in or remain under water. William Beard acquired such lands through letters patent issued pursuant to resolutions of the Commissioners of the Land Office in 1857 and 1885 and through a series of legislative grants from 1847 to 1884. While the grants from the two

sources overlap in numerous instances, for our present purposes all the condemned land which remains under water was received originally from the letters patent and all the filled land stems from the legislative grants.

■ It is Beard's contention on this appeal that it owns in fee simple all the condemned lands as a result of the letters patent and the legislative grants. The State, on the other hand, controverts this claim by asserting that the letters patent and the legislative grants were unlawful and invalid and that, in any event, even conceding the validity of the grants, such a possibility of reverter remains in the State as to entitle it to a share of the condemnation award. We twice recently have had occasion to consider similar issues on condemnation, United States v. 53¼ Acres of Land, etc., 2 Cir., 139 F.2d 244; Brooklyn Eastern Dist. Terminal v. City of New York, 2 Cir., 139 F.2d 1007; and we have committed ourselves to a practical rule of construction as required by applicable state law. As we said in the first case, 139 F.2d at page 247: "The law of New York has put the matter on a very practical basis: a right with respect to property taken in condemnation may be so remote or incapable of valuation that it will be disregarded in awarding compensation * * *. Thus a possibility of reverter may be incapable of valuation where there is no present likelihood of a reverter occurring. * * * we think that the right to compensation is to be determined by whether the condemnation has deprived the claimant of a valuable right rather than by whether his right can technically be called an 'estate' or 'interest' in the land." That this is, indeed, the general law is indicated by People of Puerto Rico v. United States, 1 Cir., 132 F.2d 220, 222, citing many cases and Restatement, Property, 1936, § 53, comment b, certiorari denied 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706. Following this approach we cannot see how any valuation can be placed upon the State's right of reverter, conceding that it does in fact exist; and hence we would be justified in going no further into the merits. But we are not content to place our decision on so narrow grounds, for the law of New York, by which we are controlled in construing the effect of the letters patent and legislative grants, appears to us to have settled that Beard's is fee simple owner of all the lands involved.

*The Letters Patent.* William Beard received two separate grants of land under water by letters patent—the first dated June 25, 1857, to himself and one Hall (whose interest he later acquired), and the second to himself alone on September 1, 1885. Both grants are similar in form, reciting that they are made "for the purpose of promoting the Commerce of our said State, and for no other object or purpose whatsoever, and with the reservations and upon the conditions hereinafter mentioned." Then, after the property description, is the reservation to the People of the right of entering upon and using the property "until the same shall have been actually appropriated and applied to the purposes of Commerce, by erecting a Dock or Docks thereon," also "the Express Condition" (capitalized in the original form) that if Beard, his heirs and assigns, did not within five years in the second grant (ten years in the first) "actually appropriate and apply the above described premises to the purposes of Commerce, by erecting a Dock or Docks thereon, and filling in the same, then these Presents and everything herein contained shall cease, determine and become void."[1] 49 F.Supp. at pages 253, 254. There is no question, however, but that William Beard did enter upon the property and erect docks thereon within the specified time in each case. If the patents are thus to be attacked, it must be on the grounds that they were in some way unlawfully issued, or that the limitation on the grants applies beyond the terms of "the Express Condition."

■ Both grants were made pursuant to resolutions of the Commissioners of the Land Office, officers created by Chapter 60 of the Laws of 1784, as repealed and replaced by Chapter 67 of the Laws of 1786, and empowered without limitation by the second statute "to grant such and so much of the lands under the water of

---

[1] It should be noted, however, that "The state only can claim the right to vacate the patent for breach of condition subsequent, and then only in a direct action or proceeding for that purpose. Archibald v. New York Cent. & H. R. R. Co., 157 N.Y. 574, 581, 52 N.E. 567." In re City of New York (Upper New York Bay), 246 N.Y. 1, 22, 157 N.E. 911, 917.

navigable rivers, as they shall deem necessary to promote the commerce of this State," but only to the adjacent owner, and provided that "all letters patent * * * shall vest the lands in fee simple." By Chapter 232 of the Laws of 1835 the powers of the Commissioners were restricted to authorizing the erection of docks and the collection of dockage, but this limitation was removed by Chapter 283 of the Laws of 1850. Except for the years between 1835 and 1850, then, with which we are not concerned here, the Commissioners of the Land Office had power to make grants in fee. The further question thereupon arises as to whether the State could validly part with title to property under navigable waters, traditionally under the control of the State as sovereign of the jus publicum. But this is a matter of state law, Appleby v. City of New York, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992; and the New York decisions have consistently upheld the right. Langdon v. Mayor, etc., of New York, 93 N.Y. 129; Williams v. Mayor, etc., of City of New York, 105 N.Y. 419, 11 N.E. 829. In any event, too, the minutes of the meeting of the Land Board previous to the 1885 grant, which was the more extensive of the two, affirmatively show that the grants in no way interfere with navigation or the rights of the public.

■ The State's final contention against the validity of Beard's claim under the letters patent is that Beard's fee simple was predicated on the continued use of the property by Beard's for the purpose of promoting the commerce of the State. Whether or not a taking by the government, as here, of a dry dock and repair plant "for repairing, altering or converting naval vessels" is a departure from such purpose, it suffices here to turn to the New York opinions, which have repeatedly construed grants of a similar, as well as an identical, type to give a fee title subject only to the condition subsequent for the erection of docks and appropriating the premises to the intended purpose within a certain time. People v. Wainwright, 237 N.Y. 407, 143 N.E. 236; In re City of New York (Upper New York Bay), 246 N.Y. 1, 21, 157 N.E. 911; New York Foundation v. People, 259 N.Y. 54, 181

N.E. 12. After the condition subsequent has served its purpose, and the required use has been had, no semblance of a right of reverter remains in the state. New York Foundation v. People of State of New York, 272 N.Y. 452, 3 N.E.2d 865, affirming 244 App.Div. 749, 279 N.Y.S. 1011. That the State was not a party to the first decision, the Upper New York Bay case, though it was to the Foundation case, that these cases may, as they suggest, limit the holding in Thousand Island Steamboat Co. v. Visger, 179 N.Y. 206, 71 N.E. 764 (that the docks there involved were public), that, indeed, the court may not fully have appraised the State's interest in preserving for the promotion of commerce this land and other land similarly granted (as is said to be substantially all that comprising the port of New York) seems not particularly relevant for us in the light of the very definite language of the state decisions. We might add, however, that this construction of the patents does not appear forced, since the statement of an express condition tends generally to make yet more unnecessary the treatment of a recital or a statement of purpose of a grant as a condition or a special limitation. Restatement, Property, 1936, § 44, comment m, n, § 45, comment o. And as to the contrast urged by the State between these commerce grants for the nominal consideration of $50 each and the grants of beneficial enjoyment made for full consideration, reference may be made to the great outlay for docks and fills required by the express condition and here had most expensively. Cf. First Const. Co. of Brooklyn v. State, supra, 194 App.Div. at pages 617, 618, 186 N.Y.S. at pages 166, 167. At any rate, upon his fulfillment of the stated condition, William Beard's fee simple ownership of the lands under water became absolute.

■ *The Legislative Grants.* The legislative acts under which Beard's claims title to the filled lands commenced in 1847 and continued sporadically down through the years until 1884.[2] These statutes, in some of which William Beard is described by name, in others only generally as an upland owner, made it lawful for certain water-front owners in the area involved to construct docks and fill in

---

[2] The pertinent acts are L.1847, c. 202; L.1848, c. 163; L.1851, cc. 83, 84; L. 1856, c. 203; L.1857, c. 763; L.1862, cc. 480, 481; L.1866, c. 856; L.1867, c. 418; L.1873, c. 702; L.1875, c. 398; L.1884, c. 491.

land under water in front of their property between the shore and a designated line. The State contends, first, that except for Chapter 418 of the Laws of 1867 and Chapter 491 of the Laws of 1884, which were passed by the required two-thirds vote, all these acts are ineffective, as they were passed only by a three-fifths vote. The simple answer to this, however, is that the 1867 statute ratifies grants made by Chapter 856 of the Laws of 1866,[3] and that the 1884 statute is even broader, ratifying the wide grants of Chapter 702 of the Laws of 1873 and Chapter 398 of the Laws of 1875, which must be read together, First Const. Co. of Brooklyn v. State, supra, 194 App.Div. at pages 611, 612, 186 N.Y.S. at pages 162, 163, and which amply cover the filled lands in issue here. Although the State in rebuttal contends that that section of the 1884 Act which ratifies previous grants is unconstitutional, that question is foreclosed for us, since the New York Court of Appeals has already upheld the constitutionality of the ratification. First Const. Co. of Brooklyn v. State, 221 N.Y. 295, 116 N.E. 1020.[4]

The technical validity of the legislative grants being thus established, a final question arises as to the type of interest received by grantees under the acts. The State argues that Beard received at most a franchise in the property, terminable at the expiration of the beneficial use to promote commerce. If this be true, as far as unfilled lands under water are concerned—a point we do not decide—it is sufficient to say that all the legislatively granted lands here condemned have been filled in; and the Court of Appeals has stated that then at least the prior interest of the grantee ripens into a full fee simple. First Const. Co. of Brooklyn v. State, supra, 221 N.Y. 295, 116 N.E. 1020. Beard's, therefore, holds not only the upland and lands under water in fee simple,

but also the filled lands, and it and its mortgagee are entitled to the entire condemnation award.

Judgment affirmed.

---

[3] The State urges that the 1867 statute only purported to amend the fifth section of the earlier act, but that section referred to the first section expressly and the entire statute by clear intent.

[4] The State asserts that the First Const. Co. case erroneously construed the 1884 Act as ratifying grants under both the 1873 and 1875 Acts, and it even secured the reopening of the hearing below to introduce seven newly discovered grants to various third parties which it claims were the only grants intended to be ratified by the 1884 Act. On the face of this record this does not seem to us a more shrewd or persuasive deduction than that made by the state courts in construing the 1873 and 1875 Acts together; but be that as it may, it clearly appears from the decisions that the State presented its claims most extensively before the state tribunals, and for us now to grant what would be in effect a retrial is hardly an appropriate step for a federal court.