COMMONWEALTH OF PUERTO RICO, Plaintiff and Appellee, *v.* COMPAÑÍA DE LOS FERROCARRILES DE PUERTO RICO, Defendant and Appellee, and HEIRS OF AVELINO VICENTE GONZÁLEZ and HEIRS OF ANA SEGUNDA AGUAYO HERNÁNDEZ, ETC., Defendants and Appellants.

No. 12155. Decided September 28, 1961.

*Eduardo Urrutia Martorell* for appellants. *Hartzell, Fernández and Novas,* and *Jaime Pieras, Jr.,* for appellee, Compañía de los Ferrocarriles de Puerto Rico.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Serrano Geyls and Mr. Justice Rigau.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This case is a sequel of *People* v. *632 Sq. Mts. of Land,* 74 P.R.R. 897 (1953). The facts pertinent to our purpose may be summed up as follows. In 1897 Avelino Vicente González by public deed ceded gratuitously to Compañía de los Ferrocarriles de Puerto Rico a parcel of land 45 meters long by 25 meters wide, adjacent to the railroad track, on condition that the Compañía de los Ferrocarriles establish a railway station there. The said parcel was segregated from a larger property of 89 cuerdas which Don Avelino owned there in Santurce and which was afterwards urbanized. Both parties to the deed recognized the mutual advantages of that transaction, and also agreed that the company could discontinue the railway station, in which case it was bound to restore to the grantor the title to the parcel. The company established the railway station; years passed and in 1948 the

Government of Puerto Rico condemned 632 square meters of land which were segregated from the parcel (of 1,125 meters) object of the aforesaid grant.

The Heirs of Avelino Vicente intervened in the proceedings and alleged that they were the sole owners of the said parcel of land; that the Compañía de los Ferrocarriles had no title, right, or interest in the said parcel; that long before condemnation the company had abandoned the use of the railway station; that the title to the parcel reverted to them and that they were entitled to the price paid by the Government for the land taken.

The case having been heard in the Superior Court, the latter disallowed the claim of the Heirs of Avelino Vicente González. Appellants allege that the trial court erred (1) in weighing the evidence "by concluding, as a matter of fact, that the possibility of reversion of the Heirs of Vicente was not imminent at the time of the condemnation proceeding, nor that the right of reversion accrued either before or after December 30, 1948"; (2) "in evaluating the facts in connection with the law and the authorities because the evidence of the railway company was insufficient as a matter of law and contrary to the legal doctrine already established in this same case" in *People* v. *632 Sq. Mts. of Land, supra;* (3) in exempting from liability the railway company and the condemnor. (December 30, 1948 is the condemnation date.)

The deed of conveyance referred to above constituted a gift of real property with resolutory clause or condition. Sections 558, 575, 583, and 1066 of the Civil Code, 31 L.P.R.A. §§ 1981, 2010, 2028, and 3041, respectively; 5 Manresa, *Código Civil Español* 165–66 (6th ed. 1951); 4 Castán, *Derecho Civil Español, Común y Foral* 197 (8th ed. 1956). The condition consisted in that, if the Compañía del Ferrocarril discontinued the railway station, it was bound in such event to restore the grantor the title to the parcel of land.

The evidence having been heard, the trial court concluded that when the Government condemned the lands in 1948, the railway company was using the railway station for the purposes for which it was established. The court also concluded that the discontinuance of the railway station by the company was not imminent. The company had discontinued some trains but not others, and was rendering service and using the railway station at the time of the taking. It was operating trains numbers 1, 2, 4, 5, and 8. It was not until several months *after* condemnation, May 18, 1949, that the company requested permission from the Public Service Commission to discontinue all passenger trains, and it was not until June 1, 1950 that the Commission granted permission. We find no ground for disturbing the weighing of the evidence made by the trial court. It is our policy to uphold the weighing of the evidence made by the trial judges, except in cases of manifest error, clear arbitrariness, or prejudice and passion. Rule 43 of the Rules of Civil Procedure; *People* v. *Amadeo*, 82 P.R.R. 98 (1961); *Vargas* v. *Sánchez*, 79 P.R.R. 754 (1957); *Martín* v. *Torres*, 79 P.R.R. 370 (1956); *Rutledge* v. *Gill*, 78 P.R.R. 665 (1955); *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763 (1953); *Palmer* v. *Barreras*, 73 P.R.R. 266 (1952); *Heirs of Muñoz* v. *Cepeda*, 72 P.R.R. 554 (1951); *Santiago* v. *Rodríguez*, 72 P.R.R. 253 (1951); *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77 (1951). Therefore, the event which would have given rise to the reversion of the title to the parcel to the grantor did not occur; the gift was in full force at the time of condemnation and the reversion never took place. Civil Code, § 1067, 31 L.P.R.A. § 3042.

There having been no reversion, the price paid by the condemnor for the lands in question belongs to Compañía de los Ferrocarriles which had dominion title over the lands at the time of condemnation. The grantor's mere possibility that the parcel of land would revert to him at some

time in the future is not a compensable right. 2 Nichols, The Law of Eminent Domain 33, § 5.221 (1) (3d ed.) ; *People of Puerto Rico* v. *United States et al.*, 132 F.2d 220, 222 (1942), *cert. denied*, 319 U.S. 752, 87 L. Ed. 1706, cited with approval in *Beard's Erie Basin, Inc.* v. *People of New York*, 142 F.2d 487, 489 (1944) ; *Carter* v. *N. Y. Central Railroad Co.*, 73 N.Y.S.2d 610, 615 (1947), *aff'd*, 77 N.Y.S.2d 265 (1948), and 80 N.E.2d 671 (1948).

 There is a long line of explicit and consistent decisions in the sense that the possibility of reversion to the grantor is not a compensable right or interest whenever, as in the case at bar, the land is taken by the State or by a public entity before the event calling for reversion had occurred. For example, *People* v. *City of Los Angeles*, 4 Cal. Reptr. 531 (1960) ; *State* v. *Cooper*, 131 A.2d 756 (1957) ; *Carter* v. *N.Y. Central Railroad Co.*, *supra; Beard's Erie Basin, Inc.* v. *People of New York, supra; People of Puerto Rico* v. *United States et al., supra; Matter of City of New York*, 38 N.Y.S.2d 25 (1942) ; *United States* v. *1846 Acres of Land*, 48 F. Supp. 721 (1942) ; *United States* v. *1119 Acres of Land*, 44 F.Supp. 449 (1942) ; *First Reformed Dutch Church of Gilboa* v. *Croswell*, 206 N.Y. Supp. 132 (1924) ; *New Haven County* v. *Parish of Trinity Church*, 73 Atl. 789 (1909) ; *Scovill* v. *McMahon*, 26 Atl. 479 (1892). This is so because the grantee has no control over the condemnation of which he is object. All property is held subject to the power of the State to take it for public purposes. *People* v. *City of Los Angeles, supra* at 541. Hence, it can not be claimed that the donee has breached the resolutory condition by reason of condemnation.

The case of *Carter* v. *N. Y. Central Rairoad Co., supra*, is very similar to the case at bar. The heirs of the grantor claimed the sum paid by the City of New York to N. Y. Central Railroad Co. for the condemnation of lands belonging to the railroad company which the predecessor had deeded to

it conditionally. The condition required that the property deeded be used by the company for certain purposes. The claimant heirs alleged that the company had breached the resolutory condition on the ground that in 1926 the company applied for and obtained permission from the authorities to discontinue the station in connection with which the property was deeded. It should be noted that in this *Carter* case the City condemned in 1927, when the company already had obtained permission to discontinue the station although before it had actually discontinued it. (As has been seen, in the case at bar the company requested permission to discontinue the passenger trains four and one-half months *after* condemnation.) The court dismissed the complaint of the heirs of Carter. It held that until there was an actual breach of the resolutory condition the reversion was not operative, and that until that moment the heirs had only a possibility that the reversion might occur, and that such possibility was not compensable.

█ In our case the heirs of Vicente contend that the discontinuance of the railway station was imminent, that is, that it was likely to occur immediately, without delay, upon condemnation of the parcel of land. We believe that the trial court acted correctly in holding that it was not. The evidence showed that the railway station was not discontinued until 1953 and that condemnation took place late in 1948.

In view of the foregoing, we conclude that the trial court did not commit error number one. Nor did it commit error number two because we believe, as did the trial court, that the evidence for the company was sufficient to support the judgment and because said judgment is not contrary to our holding in *People* v. *632 Sq. Mts. of Land, supra*. What we said there, at pp. 916 and 917, was as follows: ". . . In its motion to set aside the judgment the *Sucesión* alleged that a long time before these proceedings had begun, the Company had ceased to use the land as a railway station. It therefore

argues that the land reverted to it and that it belonged to the *Sucesión* and not to the Company when the condemnation proceeding was instituted. If the *Sucesión* can prove these facts, this case *may* be distinguishable from *People of Puerto Rico* v. *United States*, 132 F.2d 220 (C.A. 1, 1942), where the court held that a similar possibility of reverter was not a compensable interest in property which was condemned before the event calling for reverter had occurred.

"*We intimate no view on the merits of the claim of the Sucesión*. We hold only that the record before the trial court showed on its face that the *Sucesión* had a possible substantial interest in the condemned property. The trial court was therefore precluded from disposing of the compensation without notice to the *Sucesión*. The parties are in dispute as to (1) the meaning of the recordations in the Registry of Property with reference to the respective interests of the Company and the *Sucesión*, and (2) the alleged cessation of the use of the tract as a railway station. But these questions can be decided only after a hearing on the merits of the claim of the *Sucesión*. We shall therefore set aside the judgment based on the stipulation between the People and the Company and remand the case to the Superior Court, which, after hearing testimony, will resolve the controversy between the *Sucesión* and the Company on the merits." (Citations omitted. Italics ours.)

That was exactly what was done. The Superior Court, after hearing the evidence, passed upon the merits of the dispute between the heirs and the railway company. That is the judgment which we are now considering at the instance of the Heirs of Vicente. In view of the foregoing, it must necessarily be concluded that error number three was not committed either.

The judgment rendered in this case by the Superior Court, San Juan Part, on October 24, 1956, will be affirmed.